## STATE OF CONNECTICUT *v.* ROBERT T. PARRIS, JR.
### (13870)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

Argued March 20—decision released June 18, 1991

*Mark Rademacher,* for the appellant (defendant).

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, were *Mary Galvin,* state's attorney, and *Gerard F. Esposito,* assistant state's attorney, for the appellee (state).

GLASS, J. The principal issue in this sexual assault case is whether the trial court improperly admitted the

testimony of certain of the state's "constancy of accusation" witnesses without making a preliminary finding that the victim's statements to them had been made at a "natural" time. We conclude that such a finding is not a prerequisite to the admission of constancy evidence and therefore affirm the judgment of the trial court.

The defendant, Robert Parris, was convicted after a jury trial of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a),[1] one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),[2] one count of risk of injury to a child in violation of General Statutes § 53-21,[3] and one count of kidnapping in the first degree in violation of General Statutes §§ 53a-92 (a) (2) (A) and (C).[4] The defendant was sentenced to a total effec-

---

[1] "[General Statutes (Rev. to 1985)] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] General Statutes (Rev. to 1985) § 53a-71 provides in pertinent part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under fifteen years of age . . . ."

[3] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[4] General Statutes § 53a-92 provides in pertinent part: "(a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . or (C) terrorize him or a third person . . . ."

tive term of twenty years imprisonment, execution suspended after fifteen years, to be followed by three years probation. This appeal followed.

The jury could reasonably have found the following facts. In March of 1986, when the victim was fourteen years old, she lived in an apartment building where the defendant also resided. On the evening of March 12, 1986, the defendant accompanied the victim to a friend's house. At some point during their return, he dragged her into an abandoned building known as the "fan gallery." The defendant then performed various sexual acts upon the victim, including intercourse, against her will.

The defendant's principal claim focuses upon the admission of the testimony of three of the four constancy of accusation witnesses called by the state at trial: Eric Sutherland, the victim's "close friend"; Fran Dwyer, who counselled the victim at a clinic; and Detective Patricia Miranda, to whom the victim officially reported the incident. Prior to trial, the defendant moved to suppress the testimony of these witnesses, as well as that of Geraldine Katz, the victim's school guidance counsellor who ultimately testified at trial, and Cindy Howell, an assault crisis counsellor who did not testify. The defendant argued that the victim's statements to all of the proposed witnesses should be excluded as hearsay, and advanced the related claim that her statements, made from approximately ten to nineteen months after the crimes, had not been made at a "natural" time. See *State* v. *Ouellette,* 190 Conn. 84, 99, 459 A.2d 1005 (1983). Alternatively, the defendant sought to limit the number of constancy witnesses permitted to testify, as well as the victim's testimony regarding the number of people to whom she had reported the incident, in view of the "prejudicial effect" of the testimony. The state countered that the chal-

lenged testimony was admissible under the constancy of accusation "exception to the hearsay rule," that the victim had made the statements at a "natural" time, and that the testimony was not more prejudicial than probative. In support of its contentions, the state offered the victim's voir dire testimony. The victim named all of the proposed witnesses as persons to whom she had reported the incident, gave reasons for her delay in making the reports, and described the circumstances that eventually had prompted her to make them.[5]

After hearing the victim's testimony, the court found that while she normally would have reported such an incident to her mother, "she was afraid that her mother would not believe her." The court further surmised that "not reporting something like that . . . because of the fear that she would be disbelieved as time went on [probably made it] more difficult to make the report. When the report was made, it was made to a Counsellor [Katz] after a presentation of a movie on the subject [sexual assault]. I think that would be a natural time for someone who had this on their mind for a considerable period of time to make the report." Accord-

[5] The victim testified out of the presence of the jury that she had not immediately informed anyone of the incident because she was young, frightened of the defendant and because she "didn't know what to do." In particular, she had not notified her mother due to her belief that her mother would blame her. Emotional upset had prompted her first to reveal the incident to her ex-boyfriend, though she could not recall the date of that revelation. After a school lecture and film on the subject of sexual assault on January 8, 1987, the victim had spoken about the incident to the lecturer, Cindy Howell, because she had "needed to tell somebody what happened." The victim had related the incident to Katz on the following day at a meeting attended by her mother. Thereafter, the victim had informed Dwyer of the incident in connection with counselling sessions during October of 1987. She then had described the incident to Sutherland on a date she could not remember. The victim had officially reported the incident to Miranda on October 14, 1987.

ingly, the court denied the defendant's motion. At trial, the victim testified on direct examination to the facts of the incident and stated that she had told her ex-boyfriend, Howell, Katz, Sutherland and Miranda that the defendant had sexually assaulted her. The state then called Sutherland, Dwyer, Katz and Miranda, who related the victim's statements about the incident in varying degrees of detail.[6]

On appeal, the defendant argues that the court improperly: (1) admitted the testimony of Sutherland, Dwyer and Miranda without making a preliminary finding that the victim's statements to them had been made at a "natural" time; and (2) refused to restrict the number of the state's constancy witnesses, as well as the victim's testimony regarding the number of people to whom she had reported the incident, despite the "prejudicial effect" of the testimony.

I

The defendant first attacks the court's failure to make a preliminary finding, before admitting the testimony of Sutherland, Dwyer and Miranda, that the victim's statements to them had been made at a "natural"

---

[6] Sutherland testified that on a date uncertain, the victim had told him "a little story that she was raped. . . . [b]y the [d]efendant. . . . She was at some fan gallery or something and she was raped. . . . She really didn't go into any details." Dwyer testified that the victim had informed her that she had been "forced into a vacant building and assaulted . . . by [the defendant]," and that "she knew him . . . from I believe living in the house where she lived . . . and she was walking with him when she was going home." Katz testified that the victim had come to her "with a complaint of being sexually assaulted" by the defendant, and that the victim had told her that the incident had taken place in or near "the fan gallery," that "she knew this boy . . . she had gone off with him I guess knowing him and then he took her into this building unwillingly." Miranda testified that she had interviewed the victim in connection with the victim's sexual assault complaint against the defendant and gave a detailed account of the incident as the victim had described it to her.

time. In the defendant's view, the court found only that the victim's statements to Katz had been made at a "natural" time, and in the absence of a similar finding regarding her statements to Sutherland, Dwyer and Miranda, their testimony should have been excluded, and his conviction accordingly should be reversed, under the authority of *State* v. *Ouellette*, supra. We disagree.

In *State* v. *Ouellette*, supra, 99, this court indicated that before constancy of accusation evidence can be admitted, "the trial court must find, under the circumstances in each case, first that the statement was made at a time when it was natural to make it; second that the witness has been impeached by a suggestion of recent contrivance."[7] The *Ouellette* court provided two grounds for this dual prerequisite to the admission of constancy evidence. First, the court determined that because the rationale for admitting such evidence[8] "is essentially the same as that . . . for admitting prior consistent statements to counter a suggestion of recent contrivance or fabrication," there was "no analytical reason" to approach the two kinds of evidence differently. Id. Second, the court concluded that analyzing constancy evidence in a manner analogous to prior consistent statements to counter a suggestion of recent

---

[7] As for the second of these preliminary findings, the *Ouellette* court stated that "[i]n a sexual assault case, however, when the evidence concerns the crime charged, the trial court may presume . . . that the victim is impeached by a suggestion of recent contrivance." *State* v. *Ouellette*, 190 Conn. 84, 99, 459 A.2d 1005 (1983).

[8] That rationale was stated as follows: " ' "If a female testifies that such an outrage has been committed on her person, an [i]nquiry is, at once, suggested, why it was not communicated to her . . . friends. To satisfy such inquiry, it is reasonable that she should be heard in her declarations, that she did so communicate it . . . . [S]uch a course [of conduct] would be natural if the crime had been committed, but very unnatural if it had not been." ' " *State* v. *Ouellette*, 190 Conn. 84, 99, 459 A.2d 1005 (1983), quoting *State* v. *Segerberg*, 131 Conn. 546, 549, 41 A.2d 101 (1945).

fabrication would reduce "the confusion surrounding the admissibility of constancy of accusation evidence . . . ." Id.

While phrased in terms of a rule to be applied in future cases involving constancy of accusation evidence, however, the prerequisite announced in *Ouellette* was not essential to the outcome of that case. The constancy of accusation doctrine ultimately was found inapplicable in *Ouellette* because the victim's disputed statement "did not concern the crime charged and was therefore not an 'accusation' . . . ." Id., 100. Consequently, the prerequisite was merely dictum, without the force of precedent insofar as proper constancy evidence is concerned. "[T]he precedential value of a decision should be limited to the four corners of the decision's factual setting."[9] Id., 91.

Moreover, were we to adopt the *Ouellette* dictum by applying it in this case, our decision effectively would overrule a long line of precedent in the constancy of accusation context with which that dictum directly conflicts. The decisions of this court predating *Ouellette,* for example, did not condition the admission of constancy evidence upon a court's finding that the victim's statements had been made at a "natural" time. Rather, the admission of such evidence was approved "when the complainant first has testified, in court, to the facts of the alleged occurrence . . . . She is then permitted to state that she made complaint to some other person.[10] Thereupon, the person to whom she complained,

[9] We do not consider *State* v. *Pollitt,* 205 Conn. 61, 77, 530 A.2d 155 (1987), our sole decision that acknowledged, but did not examine the foundation or effect of the dictum in *State* v. *Ouellette,* 190 Conn. 84, 98–99, 459 A.2d 1005 (1983), to have infused that dictum with precedential value.

[10] In this connection, we have stated that: "It is reasonable to require that the victim, when she testifies, name those to whom she made complaint where she specifically knew those persons prior to the incident such as a relative, close friend, etc. It would be less reasonable to expect the

out of court and in the absence of the defendant is permitted to testify not only to the fact that a complaint was made but also to its details." *State* v. *Segerberg,* 131 Conn. 546, 548–49, 41 A.2d 101 (1945); see *State* v. *Brice,* 186 Conn. 449, 453–54, 442 A.2d 906 (1982).

Furthermore, contrary to the dictum in *Ouellette,* the term "natural" as employed in our prior caselaw was not connected to any preliminary issue of admissibility for the trial court's resolution. That term merely represents the phenomenon of human behavioral expectations that lends corroborative force, on one hand, to a sexual assault victim's report of the fact of the incident and its details to another, and lends impeaching force, on the other hand, to the victim's failure to make such a report or include particular details in a report made. In an early decision, this court explained the corroborative quality of constancy evidence and the impeaching quality of the lack thereof as follows: "Why has the rule been adopted that in prosecutions for rape, and for attempts to commit rape, the public prosecutor may show that the woman on whom the assault was made complained of it to her friends? It is simply because such a course would be natural if the crime had been committed, but very unnatural if it had not been. But her natural impulses would prompt her to tell all the details of the transaction. Why, on the same principle, ought not her statement of the details to be evidence? . . . If her story were true, the evidence would show constancy in the charge even to the details, and the truth [of her testimony] would more clearly appear." *State* v. *Kinney,* 44 Conn. 153, 156–57 (1876).

victim, when she testifies, to name specifically a police officer, doctor, nurse, etc. whom she did not know before the incident but to whom she did, in fact, make complaint. Nevertheless, as to the latter circumstance, it is a preliminary question of fact for the trial court to decide whether any such proffered witness was the person to whom complaint was allegedly made." *State* v. *Brice,* 186 Conn. 449, 454 n.4, 442 A.2d 906 (1982).

Finally, again conflicting with the dictum in *Ouellette,* the significance of the timing of a victim's report of the incident traditionally was a matter to be considered by the jury, exclusively, in evaluating the victim's credibility. If the victim's report had been immediate as would be expected after "such an outrage has been committed on [his or] her person"; *State* v. *DeWolf,* 8 Conn. 93, 100 (1830); the jury might logically infer that the victim's trial testimony more probably was truthful.[11] A delayed report, while suggesting a contrary inference,[12] was not subject to exclusion on the ground that it had not been made at a "natural" time. The state was entitled to introduce evidence of the delayed report and the victim was permitted to counteract the negative implications of the delay by giving reasons for it that the jury might find understandable. See *State* v. *Brigandi,* 186 Conn. 521, 529, 442 A.2d 927 (1982) ("reason that the victim did not tell the police initially was . . . a fact for the jury to pass upon with all the other evidence"); *State* v. *Byrne,* 47 Conn. 465, 466 (1880). In other words: "Whatever delay took place between the time of the attack and the time the victim first told witnesses of it does not affect the admissibility of the evidence, but merely presents a question of fact for the trier as to the weight to be given it." *State* v. *Brigandi,* supra; see *State* v. *Dziob,* 133 Conn. 167, 169, 48 A.2d 377 (1946).

---

[11] As this court explained in *State* v. *Sebastian,* 81 Conn. 1, 6, 69 A. 1054 (1908), "it is natural to suppose that the sufferer would promptly inform those standing closest to her of the indignity and shame to which she had been subjected. A failure to make complaint, within a reasonable time, created a strong presumption at common law that there was no ground for making one."

[12] A delayed statement undermined the victim's credibility because it was considered "obvious that for one who claims to have been ravished to have long kept silence about it, would, if unexplained, weaken the force of any testimony that she might give in court, in support of a prosecution for such an offense." *State* v. *Sebastian,* 81 Conn. 1, 6, 69 A. 1054 (1908).

We have stated that "the necessity of certainty and continuity in the law dictates that 'a court should overrule its own precedents for only the most compelling reasons. . . .' " *State* v. *Castonguay,* 194 Conn. 416, 435, 481 A.2d 56 (1984). While it may well be that the analytical underpinnings of our constancy of accusation doctrine resemble those of the hearsay exception for prior consistent statements to rebut a suggestion of recent fabrication, we do not find that similarity, nor has the defendant offered any additional reason, sufficiently compelling to warrant a restriction of the doctrine in the manner suggested by *Ouellette.* Constancy evidence is properly viewed as a peculiar species of evidence, and, rather than further attempt to conform our traditionally liberal doctrine to evidentiary rules designed for other classes of evidence, we leave any curtailment of the doctrine to future cases where compelling reasons presented by litigants might persuade us to do so. See *State* v. *Dabkowski,* 199 Conn. 193, 203, 506 A.2d 118 (1986). We are satisfied that the doctrine in its form prior to *Ouellette* is "rationally and socially adapted to ascertaining the truth"; id., 202 n.9; and advantageously provides criminal defendants with "a fertile field for cross-examination of a complainant with reference to ascertaining where the truth lies." Id., 202; see *State* v. *Kinney,* supra, 156.

Accordingly, we discard the dictum in *Ouellette* to the extent that it pertains to constancy of accusation evidence, and we reaffirm our precedents prior to *Ouellette* that leave the evaluation of the timing of a victim's statements and any "naturalness" thereof in the hands of the jury. The defendant's challenge to the court's failure to make a preliminary finding that the victim's statements to Sutherland, Dwyer and Miranda had been made at a "natural" time must therefore be rejected.

## II

The defendant next argues that the court improperly refused to restrict the number of constancy of accusation witnesses and the victim's testimony regarding the number of persons to whom she had reported the incident due to the "prejudicial effect" of the testimony. The defendant maintains that the court's refusal, to his prejudice, allowed the state to "bombard" the jury with the testimony of the "sheer number" of witnesses who related the victim's reports and the victim's testimony identifying the "sheer number" of people to whom she had reported the incident. In addition, the defendant contends that Miranda's testimony was "particularly harmful" because she gave "the only detailed account" of the incident as described to her by the victim.[13] We are unpersuaded.

A trial court's broad discretion to exclude evidence more prejudicially cumulative than probative certainly encompasses the power to limit the number of witnesses who may be called for a particular purpose. See *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982). "In excluding evidence on the ground that it would be only 'cumulative,' care must be taken *not* to exclude merely because of an *overlap* with evidence previously received. To the extent that evidence presents new matter, it is obviously not cumulative with evidence previously received." (Emphasis in original.) 2 D. Louisell & C. Mueller, Federal Evidence § 128. In the present case, each item of the state's constancy

---

[13] The defendant further contends that the court "failed to consider and weigh the prejudicial impact" of permitting the state to introduce the testimony of "six" constancy witnesses into evidence. Because we conclude that the testimony of the four witnesses called by the state at trial was not more prejudicial than probative, any purported failure of the court to consider the prejudicial impact of their testimony was harmless.

evidence, while overlapping in the sense that it related to the same incident, pertained to a different statement that the victim had made to a different person at a different point in time. Rather than prejudicially cumulative, therefore, the evidence covered new matter by demonstrating, as was its relevant purpose, that the victim previously had reported the incident she described on direct examination in a constant and consistent fashion.

With respect to Miranda's testimony providing the details of the victim's report to her, the court minimized any appreciable danger that the jury might treat her testimony as substantive evidence by giving an appropriate instruction as to its limited corroborative use.[14] The jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions. *State* v. *Ortiz,* 217 Conn. 648, 669, 588 A.2d 127 (1991). Finding no such indication in the record we conclude that the court properly refused to exclude or restrict the volume of the state's constancy of accusation evidence as more prejudicial than probative.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[14] The court instructed the jury that the state's constancy evidence was "admitted solely to corroborate . . . the testimony of [the victim] in Court. And it is to be considered by you only in determining the weight and credibility you will afford to her testimony."