STATE OF CONNECTICUT *v.* PHILIP CARDANY
(11743)

LANDAU, SPEAR and CRETELLA, Js.

Argued June 1—decision released August 30, 1994

*Hubert J. Santos,* with whom was *Hope C. Seeley,* for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Stephen Preleski,* assistant state's attorney, for the appellee (state).

CRETELLA, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes

§ 53-21.[1] The defendant claims that the trial court improperly (1) permitted testimony concerning the victim's delay in reporting the sexual assault, (2) charged the jury on reasonable doubt, and (3) permitted an expert witness to testify that the victim had been sexually assaulted. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, a child under the age of thirteen, lived with her mother, her brother and her step-father, the defendant. On every Tuesday night for a number of years, the victim's mother would leave the house to play bingo, entrusting the care of the victim and her brother to the defendant. On those occasions, between November, 1986, and March, 1990, the defendant, on divers dates, entered the victim's room and fondled and touched her. Sometimes, the defendant would penetrate the victim's vagina with two fingers or his tongue. He would kiss her breasts and vagina or perform oral sex on her. The victim reported the incidents to her mother on June 4, 1990.

I

At trial, the state offered, over the defendant's objection, testimony from an Outreach advocate, who worked with victims of domestic violence, that it is not unusual for abuse victims to delay in reporting incidents of abuse. The defendant contends that this testimony was inadmissible because the defendant had not initially impeached the victim's credibility on the issue of delay.

---

[1] The defendant was charged with three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), and four counts of risk of injury to a child in violation of General Statutes § 53-21. After the close of the state's case, the defendant's motion for judgment of acquittal as to one count of sexual assault in the first degree and one count of risk of injury to a child was granted. The jury found the defendant not guilty of one count of sexual assault in the first degree and one count of risk of injury to a child.

On appeal, the defendant also challenges the qualifications of the Outreach advocate as an expert.

In *State* v. *Spigarolo,* 210 Conn. 359, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989), the Supreme Court recognized that "the consequences of the unique trauma experienced by minor victims of sexual abuse are matters beyond the understanding of the average person." Id., 378. Therefore, the court held that "the state may offer expert testimony that seeks to demonstrate or explain in general terms the behavioral characteristics of child abuse victims [such as inconsistencies, partial disclosures and recantations] in disclosing alleged incidents." Id., 380.

The *Spigarolo* court, however, specifically left open the question of whether the state could use such expert testimony in the absence of the defendant's impeachment of the victim's credibility. Id. We now hold that the state may introduce expert testimony that explains in general terms the tendency of minors to delay in reporting incidents of abuse once the victim has testified and there has been testimony introducing the alleged dates of abuse and reporting.

The rationale for allowing testimony in the state's case-in-chief to explain alleged delays in reporting incidents of abuse is analogous to the rationale for allowing constancy of accusation testimony, with or without actual impeachment.

The constancy of accusation doctrine " 'allows a complainant in a sexual offense case to testify that he or she informed others of the attack. These other individuals are then allowed to testify concerning the complaint made by the victim and are permitted to relate the details of the attack as the victim narrated.' " *State* v. *Bailey,* 32 Conn. App. 773, 778–79, 621 A.2d 1157

(1993); *State* v. *Saraceno,* 15 Conn. App. 222, 247 n.6, 545 A.2d 1116, cert. denied, 209 Conn. 823, 552 A.2d 431 (1988).

Constancy of accusation testimony is admissible whether or not the victim has been impeached by a suggestion of contrivance or recent fabrication. *State* v. *Pollitt,* 205 Conn. 61, 77–78, 530 A.2d 155 (1987). It is allowed, in part, to satisfy the jury that the victim behaved reasonably in light of the alleged assault. "If the victim's report had been immediate as would be expected . . . the jury might logically infer that the victim's trial testimony more probably was truthful." *State* v. *Parris,* 219 Conn. 283, 291, 592 A.2d 943 (1991). On the other hand, "[a] delayed statement undermined the victim's credibility because it was considered 'obvious that for one who claims to have been [sexually abused] to have long kept silence about it, would, if unexplained, weaken the force of any testimony that [he or] she might give in court, in support of a prosecution for such an offense.' " Id., 291 n.12; *State* v. *Sebastian,* 81 Conn. 1, 6, 69 A. 1054 (1908).

It is natural for a jury to discount the credibility of a victim who did not immediately report alleged incidents of abuse whether or not the defense emphasizes the delay in cross-examination. Thus, testimony that explains to the jury why a minor victim of sexual abuse might delay in reporting the incidents of abuse should be allowed as part of the state's case-in-chief.

Next, the defendant claims on appeal that the Outreach advocate was not qualified as an expert, and, thus, does not satisfy the first prong of the test for admissibility of expert testimony. "A trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The test for admissibility of expert testimony is whether (1) the witness has a special skill or knowledge directly

applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Citation omitted; internal quotation marks omitted.) *State* v. *Christiano,* 29 Conn. App. 642, 649–50, 617 A.2d 470 (1992), aff'd, 228 Conn. 456, 637 A.2d 382 (1994). Because there was no objection to the qualifications of the witness as an expert this issue was not preserved in the trial court. The defendant asks that the claim be reviewed under the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine of Practice Book § 4185.

First, the defendant does not satisfy the conditions established in *State* v. *Golding,* supra, 213 Conn. 239–40. "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. "The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Graham,* 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). "In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding,* supra, 240. In this case, the defendant fails to meet the second requirement because "the admissibility of expert testimony is a matter of state evidentiary law that, in the absence of timely objection, does not warrant appellate review under [*Golding*] because it does not, per se,

raise a question of constitutional significance." (Citation omitted.) *State* v. *Joyner,* 225 Conn. 450, 480, 625 A.2d 791 (1993); see also *State* v. *Baldwin,* 224 Conn. 347, 362, 618 A.2d 513 (1993).

Second, the defendant's claim fails under the "plain error" doctrine. Practice Book § 4185 states that "[t]he [appellate] court may in the interests of justice notice plain error not brought to the attention of the trial court." "Where a trial court's action does not result in any manifest injustice, a defendant's claim under the plain error doctrine does not warrant review. . . . Such review is reserved for truly extraordinary situations where the existence of error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) *State* v. *Morales,* 33 Conn. App. 184, 197, 634 A.2d 1193 (1993), quoting *State* v. *Wright,* 207 Conn. 276, 288–89, 542 A.2d 299 (1988). In this case, the actions of the trial court did not rise to the level of plain error.

## II

Next, the defendant challenges two aspects of the trial court's instructions on reasonable doubt: (1) portions of the specific language chosen by the court to describe the term "reasonable doubt," and (2) the failure of the trial court to include a portion of the defendant's request to charge.

## A

In its charge to the jury, the trial court used well accepted language to define reasonable doubt.[2] The trial

---

[2] That portion of the charge in its entirety reads: "Proof beyond a reasonable doubt does not mean proof beyond all doubt. It does mean proof which precludes every reasonable hypothesis except that which it tends to support and is consistent with guilt and inconsistent with any other rational conclusion. Any conclusion reasonably to be drawn from all the evidence

court repeatedly emphasized throughout the entire charge that the state must overcome the defendant's presumption of innocence beyond a reasonable doubt, the state must prove each element of the crime beyond a reasonable doubt, and the defendant has no burden to prove anything.

It is fundamental that proof of guilt in a criminal case must be beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). However, "[l]ong ago, the United States Supreme Court said: 'Attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury. . . . [It was later noted] that '[j]udicial attempts to clarify the meaning of the phrase "reasonable doubt" by explanation, elaboration or illustration . . . more often than not tend to confuse or

here presented, as that evidence is credited by you, which is consistent with the innocence of the accused, must therefore prevail.

"If at the end of your deliberations you should entertain a reasonable doubt in support of any such hypothesis consistent with innocence, you must give the defendant the benefit of that doubt and find him not guilty.

"To know what a reasonable doubt is one focuses on the term reasonable. A reasonable doubt is an honest, genuine doubt supported or suggested by the evidence and based upon reason. It is not a fanciful doubt. It is not a mere possibility suggested by the evidence. There is, however, no numerical value assigned to the degree of doubt we're talking about here. Proof beyond a reasonable doubt means substantially more, I can tell you, than the kind of fifty-one percent, the preponderance of the evidence standard which controls in a civil case where one party has to tip the scales in his favor in order to prevail. It's substantially more than that.

"But, there is no need to prove this case beyond all doubt. It is merely beyond a reasonable doubt. A reasonable doubt, to try to get a sense of what it means, is the kind of a doubt that would cause you to pause or to hesitate in conducting the more important affairs of your life, a doubt to which you would pay heed in conducting the more important affairs of your life.

"Again, it is not the Defendant's job to raise reasonable doubt in your minds, though it's his right to attempt to do so, certainly. It is the State's job, which it fairly accepts, to come forward with its evidence, to present its case and to overcome the Defendant's presumption of innocence by proving the Defendant guilty beyond a reasonable doubt."

mislead.' . . . While an attempt by the trial court to clarify the meaning of reasonable doubt is not by itself reversible error . . . the question on appeal is whether the court's statements correctly conveyed the concept of reasonable doubt to the jury." (Citations omitted.) *State* v. *DelVecchio,* 191 Conn. 412, 420–21, 464 A.2d 813 (1983).

"The standard of proof beyond a reasonable doubt refers to the degree of certainty that the evidence produces in the minds of the jurors. . . . [The standard] requires that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Coleman,* 14 Conn. App. 657, 671, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988).

The defendant contends that the trial court improperly instructed the jury that (1) a reasonable doubt "is not a mere possibility suggested by the evidence" and (2) "[p]roof beyond a reasonable doubt means substantially more . . . than the kind of fifty-one percent, the preponderance of the evidence standard which controls in a civil case . . . . " Since the defendant failed to preserve this issue at trial, he requested that we review these claims under the doctrine of *State* v. *Golding,* supra, 213 Conn. 239–40, and the plain error doctrine of Practice Book § 4185.

"The first two conditions of *Golding* are met here because there is an adequate record for review and the right not to be convicted except by proof beyond a reasonable doubt is a constitutional right." *State* v. *Graham,* supra, 33 Conn. App. 442. This matter implicates the third prong of *Golding,* whether "the alleged constitutional violation clearly exists and clearly deprived

the defendant of a fair trial . . . ." *State* v. *Golding,* supra, 213 Conn. 239–40. In reviewing a constitutionally based challenge to the court's instruction to the jury, we must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction. *State* v. *Bailey,* 209 Conn. 322, 338, 551 A.2d 1206 (1988).

The defendant first claims that the trial court's instruction that a reasonable doubt "is not a mere possibility suggested by the evidence" implies that the doubt must be stronger than what the law requires. Placed in the context of the charge as a whole, it is clear that this language was employed as a simple comparison to emphasize the fact that the doubt must be based on reason. The court stated, "[t]o know what a reasonable doubt is one focuses on the term reasonable. A reasonable doubt is an honest, genuine doubt supported or suggested by the evidence and based upon reason. It is not a fanciful doubt. It is not a mere possibility suggested by the evidence." This language does not mislead the jury into believing that the doubt would be based on anything but reason.

Second, the defendant claims that the trial court's instruction that proof beyond a reasonable doubt is substantially more than 51 percent deprived the defendant of a fair trial because it diluted the state's burden of proof. In *State* v. *Moss,* 189 Conn. 364, 369, 456 A.2d 274 (1983), the Supreme Court expressed dissatisfaction with, but found no reversible error in, an instruction that read in part, " '[t]he state must shift [the burden in a criminal case] substantially out of the equipoise status . . . .'" This language is similar to the language at issue—"substantially more than fifty-one percent." The instruction here, is distinguishable from *Moss,* however, in that the trial court used a quantity, 51 percent, instead of an analogy to a scale in equipoise. The Supreme Court has indicated that this type of num-

ber analogy is undesirable. See *State* v. *DelVecchio,* supra, 191 Conn. 420–21. Here, however, the trial court used the 51 percent only as a stepping stone to convey generally the "substantially greater" burden of reasonable doubt. Further, the trial court expressly warned, immediately preceding this analogy, that there is no numerical value assigned to reasonable doubt.

Again, in reviewing the defendant's arguments concerning the trial court's jury instructions, the emphasis is on the charge as a whole and the effect that charge would have on a jury. The language employed by the trial court, as a whole, however inartful, still clearly conveyed to the jury the presumption of the defendant's innocence and the state's burden of proving each element of the crimes beyond a reasonable doubt. There is no possibility that a jury was misled by this language. The defendant cannot prevail under a *Golding* analysis in that he fails to satisfy the third prong. We further find that this is not the type of "extraordinary situation"; see *State* v. *Morales,* supra, 33 Conn. App. 197; that would amount to plain error.

## B

Next, the defendant filed a written request to charge the jury concerning reasonable doubt which stated, "the lack of evidence, for whatever reason, creates an [inference] of reasonable doubt." The trial court declined to use this language in its charge to the jury.[3] In view of the charge taken as a whole, however, the absence of this language does not constitute reversible error.

It is well established precedent that although " '[a] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given' "; *State* v. *Arena,* 33 Conn. App. 468, 488,

---

[3] The defendant did not object to the jury instructions at trial, however, his request to charge preserves the issue for appeal under Practice Book § 852.

636 A.2d 398 (1994), quoting *State* v. *Dickerson,* 28 Conn. App. 290, 294, 612 A.2d 769 (1992); " '[a] refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance.' " *State* v. *Arena,* supra, 488.[4]

"It is the trial court's responsibility to instruct the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration under the offenses charged and upon the evidence." Id., 488–89. We do not require that trial courts use a "standard" charge on reasonable doubt. This affords the trial court a certain amount of discretion in determining the language of a charge. While, here, the defendant's requested instruction is a valid description of reasonable doubt; see generally *State* v. *Ross,* 18 Conn. App. 423, 433, 558 A.2d 1015 (1989); and certainly, it would have been appropriate for the trial court to include that language in its charge to the jury, the concept of reasonable doubt was adequately conveyed to the jury without the inclusion of that specific language. An adequate charge on reasonable doubt necessarily conveys, through a description of the state's burden of proof, that a lack of evidence may cause a reasonable doubt. The defendant's request for that specific language is merely a request for an elaboration of the concept of reasonable doubt. See *State* v. *Preston,* 122 N.H. 153, 161, 442 A.2d 992 (1982). Therefore, it was not improper to

---

[4] In *State* v. *Raguseo,* 225 Conn. 114, 133, 622 A.2d 519 (1993), the Supreme Court held that "[i]f the evidence warrants it and if an accurate and timely request to charge is made, the trial court *must* instruct the jury that a lack of evidence on motive may tend to raise a reasonable doubt. . . . If, however, the state introduces evidence tending to demonstrate a motive to commit the offense, then the trial court is not obligated to give such an instruction." (Citations omitted; emphasis added; internal quotation marks omitted.) Our decision in this matter is not controlled by that holding. In *Raguseo,* the relevant portion of the charge at issue concerned motive and not, as here, a general description of reasonable doubt.

exclude that language in the face of an otherwise adequate charge on reasonable doubt. The charge as a whole also survives this review. The charge emphasized the defendant's presumption of innocence and the state's burden of proof. The language used to describe a reasonable doubt did not dilute this burden. The charge properly conveys the substance of the defendant's request.

## III

The defendant's final claim is that he was denied due process of law and his right to a jury trial when an expert witness testified that in his opinion the victim had been sexually assaulted. Again, this claim was not preserved at trial and the defendant asks for review under the doctrine of *State* v. *Golding,* supra, 213 Conn. 233, and the plain error doctrine of Practice Book § 4185. "[T]he admissibility of expert testimony is a matter of state evidentiary law that, in the absence of timely objection, does not warrant appellate review under [*Golding*] because it does not, per se, raise a question of constitutional significance." (Citation omitted.) *State* v. *Joyner,* supra, 225 Conn. 480; see also *State* v. *Baldwin,* supra, 224 Conn. 362. Further, the trial court's failure to strike this testimony does not constitute plain error.

The judgment is affirmed.

In this opinion the other judges concurred.