## STATE OF CONNECTICUT *v.* ANTHONY LITTLE
## (AC 33383)

Gruendel, Beach and Schaller, Js.

Argued May 17—officially released September 11, 2012

*Martha Hansen,* special public defender, for the appellant (defendant).

*Melissa L. Streeto,* assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Robert F. Mullins, Sr.,* assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Anthony Little, appeals from the judgment of conviction, rendered after a trial to the court, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2) and interfering with an emergency call in violation of General Statutes § 53a-183b (a). The defendant claims that (1) the state adduced insufficient evidence to sustain his conviction of (a) assault in the second degree and (b) interfering with an emergency call, and (2) the trial court abused its

discretion by admitting a recording of the complaining witness' 911 call, in addition to her written statement to the police, that together constituted cumulative evidence.[1] We affirm the judgment of the trial court.

The following facts, which reasonably could have been found by the court, and procedural history are relevant to the disposition of the defendant's appeal. On the evening of August 30, 2009, the defendant was spending his birthday with his former girlfriend, Carola Demaio. The defendant and Demaio had previously been in a relationship for approximately three years, but they were not dating exclusively at the time. At about 1:30 a.m., after drinking together for some time, the defendant and Demaio proceeded to the Hartford apartment of Channelle Ashley, the defendant's daughter. There were about eight people there, and the atmosphere was noisy and chaotic.

At about 4 a.m., one of the female guests told the defendant that Demaio had slept with the guest's boyfriend, causing the defendant to become "a little irate." The defendant began swinging a pocketknife at Demaio from across a kitchen table, cutting her left cheek. He subsequently pushed her to the floor.

Following this altercation, Ashley became upset and attempted to call the police, but the defendant knocked the cell phone from her hands. The defendant and Demaio abruptly left the party together in his car for Demaio's home in Wethersfield. As they were driving away, Ashley again called 911. She told the dispatcher that her father had cut Demaio's face with a knife and then forced her into his car. Ashley feared for Demaio's

---

[1] The defendant also claimed that the prosecutor inappropriately characterized the incident at trial. The defendant did not develop this allusion to prosecutorial impropriety in his brief; therefore, we decline to address it. See *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 100–101, 709 A.2d 14 (1998).

safety and urged the police to respond quickly. She also asked the police not to inform the defendant that she had reported the incident because she did not want him to "come after [her]." Hartford police consequently responded to Ashley's apartment at about 5 a.m.

Among the officers responding to the scene were Corey Somoskey and Robert Hathaway. The defendant called Ashley twice from his car while he and Demaio were en route to Wethersfield. During the first call, which was placed on speakerphone so the officers could hear, Somoskey asked the defendant to return to the apartment with Demaio. The defendant refused, stating that he was almost to Massachusetts. When the defendant called again, Demaio spoke to the officers; she told them that she was already at home, and assured them that she was fine and did not need their assistance.

Somoskey subsequently took a sworn written statement from Ashley, which documented the incident between the defendant and Demaio. The statement was corroborated by a party guest who preferred to remain anonymous. Ashley stated that the defendant had "slashed" Demaio's cheek with a pocketknife following an argument. She further asserted that the defendant had knocked her cell phone from her hand to prevent her from calling 911 before forcing Demaio into his car to leave. She also averred that the defendant had threatened Somoskey and Hathaway over the telephone when they asked him to return to the apartment with Demaio.

Wethersfield police officers, whose assistance had been requested by the Hartford police, were waiting at Demaio's home when she and the defendant arrived at approximately 6 a.m. Somoskey and Hathaway arrived shortly thereafter. The officers noticed a fresh laceration on Demaio's cheek, which she had covered with makeup during the drive from Hartford because she

"didn't want [the defendant] to get in trouble." When questioned about the source of her cut, Demaio alternatively attributed it to a cat scratch and a fight with Ashley.

The defendant was arrested and frisked. No pocketknife was recovered. He was charged with assault in the second degree in violation of § 53a-60 (a) (2) and interfering with an emergency call in violation of § 53a-183b (a). A full protective order in favor of Demaio was issued against the defendant at his arraignment.

After a two day trial to the court on December 2 and 3, 2010, the defendant was convicted of violating §§ 53a-60 (a) (2) and 53a-183b (a). The court imposed a total effective sentence of six years incarceration, execution suspended after two years, with three years of probation. This appeal followed.

I

The defendant's first two claims challenge the sufficiency of the evidence adduced at trial to sustain his conviction of assault in the second degree and interfering with an emergency call. We begin by setting forth the applicable standard of review. "The standard of review employed in a claim of insufficient evidence is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the [finding of guilt]. Second, we determine whether upon the [evidence] so construed . . . the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[E]vidence is not insufficient [merely] because it is conflicting or inconsistent. [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence

and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject. . . . As a corollary, [q]uestions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *State* v. *Altayeb*, 126 Conn. App. 383, 387, 11 A.3d 1122, cert. denied, 300 Conn. 927, 15 A.3d 628 (2011).

"In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's finding] of guilty." (Internal quotation marks omitted.) *State* v. *Santos*, 104 Conn. App. 599, 612, 935 A.2d 212 (2007), cert. denied, 286 Conn. 901, 943 A.2d 1103, cert. denied, 555 U.S. 851, 129 S. Ct. 109, 172 L. Ed. 2d 87 (2008).

A

The defendant first claims that there was insufficient evidence to sustain his conviction of assault in the sec-

ond degree.[2] Specifically, the defendant argues that inconsistencies in Demaio's and Ashley's various accounts of what happened at Ashley's apartment created reasonable doubt as to whether he had the requisite intent to cause physical injury to Demaio, or, alternatively, whether he was responsible for her injury at all. This claim can be reduced to a challenge to the trial court's credibility determinations. The defendant essentially contends that the court should have accepted as plausible Demaio's testimony that her injury was inflicted negligently, instead of crediting Ashley's written statement and 911 call, which, together with circumstantial evidence, reasonably could support a finding beyond a reasonable doubt that the act was intentional. This claim is unavailing.

The following additional facts are necessary for the resolution of this claim. Both Demaio and Ashley—respectively, the defendant's former girlfriend and daughter—were subpoenaed by the state to testify at trial. Ashley testified that she would rather go to jail than continue to testify against her father. Demaio candidly asserted that she cared deeply for the defendant and was conscious of the fact that he had small children and a family; thus, she admitted taking steps to mitigate any consequences that might result from her injury. The state also adduced evidence that, despite the issuance of the protective order, approximately one month after the defendant's arrest, he arranged to have dinner with Demaio at a Hartford restaurant. The two discussed "the whole situation," and the defendant apologized for cutting Demaio's face. During this meeting, the defendant pressured Demaio into authoring a letter asking the state's attorney to drop the charges against

---

[2] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury . . . by means of a deadly weapon or a dangerous instrument . . . ."

the defendant because the incident had been "a huge misunderstanding" and she had not in fact been assaulted with a weapon.

At trial, Ashley claimed that her ability to recall the altercation was compromised by alcohol and the passage of time. Even after reviewing her written statement and listening to a recording of her 911 call, Ashley declined to testify in complete conformity with her prior assertions. Specifically, she would not state that she had actually seen the defendant slash Demaio, or that he had interfered with her first attempt to call 911. The most Ashley would concede at trial was that "at the end of the scuffle I saw my dad with a knife and [Demaio] was cut."

Demaio, for her part, repeatedly sought to minimize the degree of her injury, preferring to characterize it as a "scrape," a "little scratch," or a "nick" that might have been caused unintentionally. Instead of testifying that the defendant had deliberately cut her, Demaio described the defendant as carelessly swinging his pocketknife in her direction.

Focusing on these inconsistent narratives, at the close of the state's case, the defendant moved for a judgment of acquittal on the assault charge. The defendant argued that, although the evidence may have supported a conclusion of recklessness, there was insufficient evidence to establish that he intended to cause physical injury to Demaio. From the defendant's perspective, the evidence merely demonstrated that he was "flailing a knife around" and that he may have "reached over" toward Demaio and accidentally injured her. The court denied the motion.

Construing the evidence in the light most favorable to sustaining the court's finding of guilt, there was clearly a reasonable view of the evidence that permitted the court to hold that the defendant intended to injure

Demaio.[3] As the defendant acknowledges, the intent of the accused is a question for the fact finder, and the fact finder's conclusions in this regard cannot be disturbed unless they are unreasonable. See *State* v. *Turner*, 24 Conn. App. 264, 268, 587 A.2d 1050 ("when the conclusion [regarding intent] is one that is dependent on the resolution of conflicting testimony, it should ordinarily be left to the [fact finder] for its judgment"), cert. denied, 218 Conn. 910, 591 A.2d 812 (1991). Although the testimony regarding the defendant's intent was inconsistent, the court was not obligated to accept Demaio's characterization of events. Demaio explicitly stated that, given her relationship with the defendant, she was uncomfortable testifying against him. The state also adduced evidence that the defendant had taken steps to discourage Demaio from cooperating with the state. The court therefore had good reason to view aspects of her testimony with skepticism.

Moreover, the salient facts concerning Demaio's assault were undisputed in the trial testimony. Both Ashley and Demaio testified that the defendant was wielding a knife; there was a fight or "scuffle" involving the defendant and Demaio; and an injury to Demaio resulted. Thus, it was not unreasonable or illogical for the court to infer that the injury had been intentionally inflicted, consistent with the narrative in Ashley's written statement and 911 call. See *State* v. *Virgo*, 115 Conn.

---

[3] The state contends, as a threshold matter, that the defendant's first claim was inadequately briefed and consequently forfeited. As the state correctly points out, the defendant erroneously stated in his opening brief that there was insufficient evidence adduced at trial to establish that he had intended to cause *serious* physical injury to Demaio, a requirement of § 53a-60 (a) (1) but not § 53a-60 (a) (2). The state argues that this error should result in the abandonment of the defendant's first claim. Despite the defendant's misstatements regarding the degree of injury required under § 53a-60 (a) (2), the crux of his claim is that he did not intend to cut the victim at all. Therefore, notwithstanding this semantic error, this issue has been sufficiently briefed and is not abandoned.

App. 786, 805, 974 A.2d 752 (intent to cause physical injury can be inferred from "the events leading up to and immediately following the incident" [internal quotation marks omitted]), cert. denied, 293 Conn. 923, 980 A.2d 914 (2009). For these same reasons, the theory that Demaio's injuries were the result of a fight with Ashley was reasonably rejected.[4]

B

The defendant next claims that the state adduced insufficient evidence to demonstrate that he had the specific intent to interfere with an emergency call. The defendant specifically argues that the state failed to prove beyond a reasonable doubt that he knew that Ashley was calling 911, thereby negating a finding of intent to interfere with such a call.[5] This claim also lacks merit.

The following additional facts are relevant to the disposition of this claim. Like the defendant's challenge of the evidence supporting his assault conviction, his argument here is largely based on the divergence of the various accounts of what occurred at Ashley's apartment. At trial, Demaio testified that she did not see Ashley call 911. Ashley, despite the assertions in her written statement, testified that she could not remember whether the defendant had obstructed her first 911 call; in fact, she stated that she recalled making only

---

[4] Although the defendant adduced testimony at trial that Demaio told Somoskey that her injuries were the result of a fight with Ashley, Demaio disclaimed this explanation at trial, and the defendant did not ask Ashley on cross-examination if such a fight occurred. Demaio testified that she was like an aunt or mother to Ashley.

[5] General Statutes § 53a-183b (a) provides in relevant part: "A person is guilty of interfering with an emergency call when such person, with the intent of preventing another person from making or completing a 9-1-1 telephone call or a telephone call . . . to any law enforcement agency to request police protection or report the commission of a crime, physically or verbally prevents or hinders such other person from making or completing such telephone call . . . ."

one such call, which she placed after the defendant had left her apartment with Demaio. After her memory was refreshed with her inconsistent written statement, Ashley asserted, "I don't want to do this no more. Can I just go to jail?" Even when confronted with the written statement, Ashley would not testify that the defendant had interfered with her first 911 call; she responded, "I [only] remember bits and pieces of that night. I mean, if that's what I said that night at that moment."

At the conclusion of the state's case, the defendant also moved for a judgment of acquittal on the charge of interference with an emergency call. He specifically argued that the state had not established what he termed the "acknowledgment" element of the statute; that is, there was no evidence that Ashley expressly announced her intention to call 911 before the defendant allegedly knocked the cell phone from her hands. Thus, the defendant contended that the state had failed to prove that he had knowledge that Ashley was summoning law enforcement assistance and therefore could not have possessed the intent to interfere with such a call. The court denied the motion. The essence of this argument is reprised on appeal. The defendant additionally asserts that, because Demaio claimed not to know that Ashley had called 911, it was unlikely that the defendant knew, either. We find this theory of imputed ignorance unpersuasive.

Section 53a-183b (a) is a specific intent crime. See General Statutes § 53a-183b (a). Specific intent requires that the "defendant must have the conscious objective to cause the specific result." *State* v. *Chasse,* 51 Conn. App. 345, 369, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). Therefore, liability can be imposed under § 53a-183b (a) only where the state proves that the defendant had the conscious objective to prevent "another person from making or completing a 9-1-1 telephone call or a telephone call . . . to any

law enforcement agency to request police protection or report the commission of a crime . . . ." General Statutes § 53a-183b (a).

"It is well established that the question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence . . . . Intent may be and usually is inferred from [conduct. . . . Whether] such an inference should be drawn is properly a question for the [fact finder] to decide." (Citations omitted; internal quotation marks omitted.) *State* v. *Torwich*, 38 Conn. App. 306, 314, 661 A.2d 113, cert. denied, 235 Conn. 905, 665 A.2d 906 (1995).

In the context of a sufficiency of the evidence challenge, "it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Sherman*, 127 Conn. App. 377, 382, 13 A.3d 1138 (2011).

The evidence, taken in the light most favorable to sustaining the court's finding of guilt, indicates conduct by the defendant consistent with his awareness that Ashley had become sufficiently concerned after witnessing his assault of Demaio that she decided to call the police. Indeed, Ashley's anxiety following the assault was apparent to others at the party. For example, Demaio recounted at trial that "[Ashley] got very upset and thought that something was going to happen.

She became very paranoid." When Ashley attempted to call the police, the defendant swatted her cell phone from her hand and then quickly absconded with Demaio. After the defendant had pushed Demaio onto the floor, Ashley helped Demaio to stand and tried to prevent the defendant from further harming Demaio by telling the defendant "to go." Immediately after the defendant slashed Demaio's cheek with a pocketknife, Ashley "grabbed" her cell phone and "proceeded to call [the] police." The defendant's physical act of preventing Ashley from using her cell phone combined with his abrupt departure permitted the reasonable inference that the defendant was aware of circumstances in which she would likely attempt to contact the police and that he considered it expedient not to linger at the scene of the crime. While driving to Demaio's home in Wethersfield, the defendant contacted Ashley in an apparent attempt to smooth things over.[6] This attempted intervention provides further circumstantial evidence that the defendant knew that Ashley was considering summoning the police. Undergirding this circumstantial evidence was Ashley's written statement, which expressly alleged the defendant's interference with her 911 call.

It was not necessary for the state to prove that Ashley had expressly announced an intention to call 911; "[i]t was within the province of the [trier] to draw reasonable and logical inferences from the facts proven." (Internal quotation marks omitted.) *State* v. *Turner*, supra, 24 Conn. App. 268. Given the facts adduced at trial, it was not unreasonable or illogical for the trial court to infer that the defendant knew that Ashley was making a telephone call to summon police assistance and that

---

[6] There was some inconsistency as to who initiated the first telephone call between Ashley and the defendant. Somoskey and Ashley testified that the defendant initiated the call, and Somoskey's police report said the same. Demaio, on the other hand, testified that Ashley had called the defendant.

his conscious objective was to prevent her from making the telephone call.[7]

## II

The defendant's final claim is that the admission of the recording of Ashley's 911 call, in addition to her written statement to the police, constituted cumulative evidence and thus should not have been admitted.[8] We do not agree.

The following additional facts are relevant to this claim. Andrew Jaffee, civilian director of Hartford's 911 dispatch center, testified at trial that he received a subpoena requesting the preservation of Ashley's 911 call from the morning of August 31, 2009, and that he consequently copied the recording of the call onto a compact disc (CD). The state adduced testimony that all calls received by the state's 911 system are recorded and retained for thirty days, that the CD was made in conformity with the standard procedures observed by the dispatch center and that it was a complete and accurate recording of the call.

At the end of Jaffee's direct examination, the state moved to admit the CD as a full exhibit. Defense counsel responded: "No objection. I've heard it." The prosecutor then asked to publish the recording to the court, and the court granted permission. Defense counsel then objected, stating that he had agreed only to the admission of the CD containing the recording, but not to its contents. The state responded that defense counsel had missed his opportunity to object and, further, that the

[7] On the facts of this case, we need not decide whether, in order to sustain a conviction, there must be evidence that the defendant had reason to infer that an emergency call was being placed at the time of his preventive act.

[8] There were several issues that were raised by the defendant at trial regarding this recording, including the proper basis for its admissibility and whether it was reliable. The sole issue raised on appeal is whether the recording was cumulative of Ashley's written statement.

recording was being offered only to prove that the Hartford police were dispatched to Ashley's apartment. The state additionally argued that, in light of Jaffee's testimony, the substance of the recording should be admissible under the business record exception to the hearsay rule. The court subsequently admitted the recording under this exception, but only for the limited purpose proffered by the state. The court assured defense counsel that he could renew his objections if the recording were later offered for substantive purposes.

During Ashley's subsequent testimony, the state played the recording again to refresh her memory of what she had told the 911 dispatcher. When Ashley did not testify in complete conformity with her prior statements, the state sought to admit Ashley's written statement under *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). Defense counsel objected. He argued that if the court were to admit the statement, the recording of the 911 call, if ultimately admitted for substantive purposes, would constitute cumulative evidence because the statement "says everything the tape says plus more." The state contended that both pieces of evidence were necessary for it to prove the two charges against the defendant. Specifically, the state noted that the written statement included Ashley's allegation that the defendant had prevented her from calling the police, information that she did not convey to the 911 dispatcher.

The court admitted both the recording and the written statement under *Whelan*. As to whether the recording was cumulative, the court noted that, although it was in some ways duplicative of the written statement, the recording was uniquely valuable because it allowed the court as the fact finder to assess Ashley's state of mind when she called 911. The court also noted that it was

able to determine "what's cumulative and what's not" after having reviewed the two pieces of evidence.

As a preliminary matter, the state argues that the defendant waived at trial his claim that Ashley's 911 call constituted cumulative evidence. We disagree. At the time of the purported waiver, Ashley's statements could not properly have been admitted under the business record exception. See General Statutes § 52-180; Conn. Code Evid. § 8-4 (a). "Statements and information obtained from . . . persons outside the 'business' are not admissible even though they are included in a business record because it is the duty to report in a business context that provides the reliability [that] justif[ies] this hearsay exception. . . . [I]nformation in a business record if obtained from a person with no duty to report is . . . admissible [only if it falls] within another hearsay exception . . . ." (Citations omitted.) C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.28.7, pp. 673–74; see also State v. Berger, 249 Conn. 218, 231, 733 A.2d 156 (1999); State v. Torelli, 103 Conn. App. 646, 660–62, 931 A.2d 337 (2007) (noting that 911 statements from citizens are admissible only where they fall within hearsay exception other than business record exception). Thus, under the foundation laid by the state when it first sought to admit the recording as a full exhibit, Ashley's statements to the dispatcher constituted inadmissible hearsay, and the state had not identified another exception that would render them admissible. The court implicitly recognized this distinction by initially limiting the state's use of the 911 call to prove that the Hartford police had been dispatched to Ashley's apartment—a use of the recording that would not have required consideration of the truth of Ashley's statements. The court assured the defendant that, if the state later sought to admit the recording for substantive purposes, his objections could be renewed.[9] When the

---

[9] The state contends that when the prosecutor "sought to admit the audio recording . . . under the business record exception to the hearsay rule, it

state later sought admission of the recording under *Whelan*, the defendant timely objected on the additional ground that it was cumulative of the written statement. We therefore turn to the merits of the defendant's claim.

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Coccomo*, 302 Conn. 664, 670–71, 31 A.3d 1012 (2011).

Relevant evidence may be excluded if it will cause "undue delay, waste of time or needless presentation of cumulative evidence." Conn. Code Evid. § 4.3. "In excluding evidence on the ground that it would be only cumulative, care must be taken *not* to exclude merely because of an *overlap* with evidence previously received. To the extent that evidence presents new matter, it is obviously not cumulative with evidence previously received." (Emphasis in original; internal quotation marks omitted.) *State* v. *Parris*, 219 Conn. 283, 293, 592 A.2d 943 (1991), quoting 2 D. Louisell &

laid the appropriate foundation for so doing, and the trial court admitted it as such." This characterization suggests a clarity that was absent from the colloquy regarding the admissibility of the recording. When the state initially moved to admit the CD as a full exhibit, it did not articulate a basis for admitting Ashley's hearsay statements. As noted previously, without an additional hearsay exception, Ashley's statements were not admissible under the business record exception. Because the state had not proffered a basis for admitting these statements, it was not unreasonable for the defendant to have consented to the admission of the physical CD, but not to its contents. That the court ultimately admitted the recording under *Whelan* undermines the state's position that the full recording had already been admitted for its truth under the business record exception when the defendant first objected.

C. Mueller, Federal Evidence (1985) § 128. Multiple statements by an individual recounting the same event, made to different people at different times, may be relevant to show that the statements were consistent. See *State* v. *Parris*, supra, 294. "Rather than [being] prejudicially cumulative . . . [such overlapping evidence] demonstrat[es] . . . that the victim previously had reported the incident she described on direct examination in a constant and consistent fashion." Id. Relevant cumulative evidence is properly excluded when, in the court's exercise of discretion, it is unfairly cumulative and, thus, is more prejudicial than probative. Id., 293.

In the present case, the court did not abuse its discretion by admitting both Ashley's 911 call and written statement. Although there was some overlap between the two sources, the written statement did not contain all of the factual information conveyed in the recording of the 911 call. The recording included details about the defendant's treatment of Demaio during their departure that the statement did not and also allowed the court to assess Ashley's state of mind immediately after the assault of Demaio. The recording demonstrated that Ashley feared the defendant, which may have accounted for her reluctance to testify candidly, and her urgent tone demonstrated her genuine concern for Demaio's safety. Moreover, the defendant placed Ashley's veracity squarely in issue. Having done so, the defendant could not also remove from the fact finder the very tools by which to make a credibility determination; the consistency between the 911 call and the written statement was relevant for this purpose. See id. Finally, even if these two pieces of clearly relevant evidence were cumulative, the defendant has not alleged any unfair prejudice that resulted from their admission. He asserts only that the 911 call strengthened the case against him, but it is axiomatic that evidence is not unfairly prejudicial merely because it is

incriminating. See *State* v. *James G.*, 268 Conn. 382, 399, 844 A.2d 810 (2004) ("[a]ll adverse evidence is [by definition] damaging to one's case, but [such evidence] is inadmissible *only if* it creates *undue* prejudice so that it threatens an injustice were it to be admitted" [emphasis in original; internal quotation marks omitted]).[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The defendant additionally argues that under *State* v. *Bermudez*, 95 Conn. App. 577, 897 A.2d 661 (2006), it was improper for the court to permit the prosecutor to present extrinsic evidence of Ashley's written statement and the recording of her 911 call. See id., 585 ("the appellate courts in this state have established that when a witness admits to making a prior inconsistent statement, additional evidence of the inconsistency is merely cumulative"). Although § 6-10 of the Connecticut Code of Evidence generally precludes the use of extrinsic evidence of a prior inconsistent statement once the witness admits making such statement, Ashley never adopted material aspects of her prior statements. She testified that she did not witness the defendant cut Demaio and that she had made only one 911 call. In the absence of an admission, evidence of the prior inconsistent statements is not cumulative. See *State* v. *Daskam*, 10 Conn. App. 50, 54, 521 A.2d 587 (where witness refuses to admit to making prior material statements, extrinsic evidence of prior inconsistency not merely cumulative), cert. denied, 203 Conn. 806, 525 A.2d 520 (1987). Moreover, the *Bermudez* court "emphasize[d] that the decision to admit extrinsic evidence for impeachment purposes is vested in the liberal discretion of the trial court." *State* v. *Bermudez*, supra, 586.