STATE OF CONNECTICUT *v.* RANDY VIRGO
(AC 28877)

Harper, Lavine and Beach, Js.

Argued March 17—officially released July 21, 2009

*Jeremy S. Donnelly*, for the appellant (defendant).

*Richard K. Greenalch, Jr.*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *David L. Zagaja*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Randy Virgo, appeals from the judgment of conviction, following a jury trial, of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48, and assault in the first degree as an accessory in violation of General Statutes §§ 53a-59 (a) (1) and 53a-8.[1] The defendant claims that (1) the trial court improperly joined two cases for trial and (2) the evidence does not support a finding of guilt as to either crime of which he stands convicted. We affirm the judgment of the trial court.

The defendant was charged with crimes under two separate docket numbers. Under docket number CR-14-595029 (New Britain Avenue case), the defendant was charged with crimes that allegedly occurred shortly before noon on May 16, 2003, along New Britain Avenue in Hartford. Specifically, in that case, the defendant was charged with the two crimes of which he stands convicted as well as conspiracy to commit robbery in the first degree and attempt to commit robbery in the

---

[1] The court sentenced the defendant to a total term of incarceration of twenty years, suspended after twelve years, followed by five years of probation.

first degree. The jury returned a verdict of not guilty with regard to these latter two counts.

Concerning the charges brought in that case, the state presented evidence of the following facts. The defendant was driving an automobile in which Wayne Radney was a passenger. The defendant drove alongside Wilfredo Aponte and Louis Medina, who were walking near the intersection of Hillside Avenue and Sherbrooke Street in Hartford. The defendant and Radney conversed with Aponte and Medina about purchasing marijuana. Aponte told the defendant and Radney that he knew where they could purchase marijuana. Aponte thereafter got into the automobile with the two men; he sat in the backseat behind the defendant, who was driving. Medina stayed behind.

The defendant did not follow Aponte's directions but drove the automobile to a parking lot located along nearby New Britain Avenue. Radney, sitting in the front passenger seat, turned to Aponte and pointed a small caliber handgun at him. The defendant, sitting in the driver's seat, turned to Aponte and pointed a large caliber handgun at his face. While pointing their handguns at Aponte, both men smiled at Aponte but did not speak. Aponte quickly attempted to exit the automobile and flee the scene. Radney shot Aponte in the chest and in his back. The defendant shot Aponte in his right arm. Aponte survived the shooting but sustained serious physical injuries.

Under docket number CR-14-596133 (Albany Avenue case), the defendant was charged with crimes that allegedly occurred along Albany Avenue in Hartford, approximately one-half hour after the incident on New Britain Avenue. In the Albany Avenue case, the defendant was charged with murder as an accessory and conspiracy to commit murder. During the trial, the state filed an amended information also charging the defendant with

manslaughter as a lesser offense included within murder as an accessory. The jury returned a verdict of not guilty as to all of these counts.

With regard to the Albany Avenue case, the state presented evidence that a shooting occurred along Albany Avenue at approximately 12:18 p.m. on May 16, 2003. The victim of that shooting died from small caliber gunshot wounds. The state argued that Radney was the shooter and that the defendant acted as a lookout during the crime. The state presented evidence that the same automobile was used in both incidents and that the police later arrested Radney, who was in possession of the small caliber handgun used in the Albany Avenue shooting. Additionally, an eyewitness to the Albany Avenue shooting gave police a written statement and, from photographic arrays, identified as the perpetrators of the crime both the defendant and Radney. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly joined the New Britain Avenue and Albany Avenue cases, thereby causing him substantial prejudice.[2] We disagree.

---

[2] The defendant asserts, in an abstract manner, that the court violated his right to due process afforded by article first, § 8, of the Connecticut constitution. Apart from referring to this provision of our state constitution, and setting forth the text of this provision in a footnote, the defendant does not specifically analyze his claim under our state constitution. He does not explain the rights afforded by this provision, let alone how such specific rights apply to his claim concerning joinder. To the contrary, several of the authorities on which the defendant relies in his brief address claims raised under our federal constitution. The defendant, however, did not state a claim under the federal constitution.

To the extent that the defendant has raised a state constitutional issue, we deem it abandoned. "We . . . repeatedly [have] apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004).

The record reflects that prior to trial, the state filed a motion to consolidate the two cases pending against the defendant. After providing the court with information concerning the factual allegations and charges at issue in each case, the state argued that the cases involved discrete and easily distinguishable factual scenarios and that the crimes alleged in both cases were similar in terms of the nature of the conduct at issue. The state also argued that consolidating the cases for trial would not result in a lengthy trial or a trial that would consist of complex or confusing issues. Alternatively, the state argued that joinder was appropriate because evidence relevant to the issues of identity and intent would be admissible in both cases.

The defendant objected to the motion, arguing that there was a risk of prejudice in joining the cases for trial. The defendant's attorney argued that the facts in each case were similar but "legally unrelated." He argued that joinder was inappropriate because the conduct alleged in each case was materially distinct; in the New Britain Avenue case, the defendant was alleged to be a shooter, and, in the Albany Avenue case, the defendant was alleged to be a lookout for the shooter, Radney. The defendant's attorney also argued that joinder was inappropriate because the alleged crimes occurred within a short time period on the same day. The defendant's attorney also suggested that the handgun discovered in Radney's possession, which the state alleged was used in both shootings, was irrelevant to the charges involving the defendant.

The court overruled the defendant's objection and granted the state's motion. The court noted its preference to join cases in the interest of judicial economy,

Our thorough review of the defendant's brief reflects that the defendant has analyzed his claim on the ground that the court abused its discretion by joining the cases for trial and that he was substantially and unfairly prejudiced by the court's ruling. We analyze the claim solely on that basis.

provided that the defendant has not shown that substantial prejudice would be caused by such ruling. Relying on several considerations, the court reasoned that such prejudice had not been demonstrated. First, the allegations at issue in each case were not particularly brutal or shocking such that there was a risk that the evidence in one case would taint the jury's view of the other case. Second, the cases involved easily distinguishable factual scenarios that readily could be separated during the trial. Third, neither case involved complex issues. The court ordered the state to "compartmentalize" the evidence in each case during its presentation of the evidence, such that the state should present all of the evidence relevant to the first case and then all of the evidence relevant to the second case.

"The principles that govern our review of a trial court's ruling on a motion for joinder or a motion for severance are well established. Practice Book § 41-19 provides that, [t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together. See also General Statutes § 54-57 ([w]henever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise). In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions. . . .

"Substantial prejudice does not necessarily result from a denial of severance even [if the] evidence of one

offense would not have been admissible at a separate trial involving the second offense. . . . Consolidation under such circumstances, however, may expose the defendant to potential prejudice for three reasons: First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all. . . .

"Despite the existence of these risks, this court consistently has recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion . . . will not second guess the considered judgment of the trial court as to the joinder or severance of two or more charges. . . .

"The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, we have identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the

defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 286 Conn. 17, 27–29, 942 A.2d 373 (2008). These three factors, often referred to as the *Boscarino* factors, were articulated in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987).

The court's decision reflects its careful consideration of these relevant factors. The defendant argues that the first factor weighed against joinder because the shootings occurred within a relatively short period of time on the very same day and because the state suggested that some of the same evidence was relevant with regard to both shootings. The court reasoned that the facts involved in each case could be readily and easily distinguished. We agree with that assessment.

The evidence reflects that each shooting incident involved a different victim. Each incident occurred at a different time and at a different location. The state relied on different theories of criminal liability with regard to each shooting. We are not persuaded that these cases were not easily distinguishable or that it was likely that the jury would have had difficulty evaluating the events underlying each case in a logical and separate manner. Furthermore, our review of the record reflects that the state complied with the court's order to present the evidence with regard to each shooting and victim in·a separate manner such that there was little or no likelihood that the jury would confuse the evidence relevant to one shooting with the evidence relevant to the other. Throughout the trial, the parties dealt with the evidence as to each case in a similar manner. Finally, the court clearly distinguished between the two separate incidents and the law applicable to the charges related to each incident during its

charge. These instructions reinforced similar instructions provided to the jury throughout the trial.

In its charge, the court unambiguously and directly instructed the jury that it must consider each incident separately.[3] The defendant speculates, but does not in any way demonstrate, that the jury did not follow these

[3] The court delivered the following instruction to the jury: "As I indicated earlier, the court has consolidated two entirely separate and distinct cases, involving two separate incidents, together for trial. Under Connecticut law, the court has authority to combine two separate cases as a matter of judicial economy.

"That is what has occurred here. The state is permitted to try the defendant for two separate cases before a single jury, so long as the jury considers each incident separately. That is why we have two informations and why you have heard evidence of two distinct incidents which the state alleges occurred on May 16, 2003.

"The state presented evidence about what it claims occurred on New Britain Avenue and presented evidence about what it claims occurred on Albany Avenue.

"It is up to you to decide whether evidence pertaining to one incident has applicability or inapplicability to the other incident in making your separate factual findings as [to] what has been proven and what has not been proven relative to each of the charges in each information.

"However, I again emphasize that during your deliberations, you must consider separately each case and the law applicable to each case, in accordance with the instructions I give you.

"You must not allow the law relevant to one case to influence or to be used in your consideration of the other case, unless I instruct you, and I will, that a particular instruction may be applied in both cases.
* * *
"You must deliberate carefully on each count in each of the two informations. You must not conclude that just because you find the defendant guilty or not guilty of one count in a particular information that he is automatically guilty or not guilty of one or more of the other counts in that information.

"You also must not conclude that just because you find the defendant guilty or not guilty of an offense or charges in one information, that he is automatically guilty or not guilty of an offense or offenses charged in the other information.
* * *
"It will be your duty to separately consider each information [and] each charge or count in each information separately. And, when you return to the courtroom, you will be asked whether or not the defendant is guilty or not guilty as charged in each of the separate counts of each information, and you will render your unanimous verdict accordingly."

We note that the defendant did not object to this instruction at trial and does not challenge the propriety of the court's instruction in this appeal.

instructions.[4] Absent clear evidence to the contrary, we presume that the jury followed the court's instructions. See *State* v. *Anderson*, 86 Conn. App. 854, 870, 864 A.2d 35, cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005). Additionally, we are mindful that the jury reached a verdict of not guilty with regard to all of the charges pending in the Albany Avenue case and two of the four charges pending in the New Britain Avenue case. Although these facts are not dispositive of the claim before us, they belie the defendant's assertion that the jury was unable to, or did not, distinguish between the separate events and charges involved in each distinct case. All of these considerations lead us to conclude that the cases involved easily distinguishable factual scenarios.

The defendant does not argue that the second or third *Boscarino* factors were not satisfied in this case, and, therefore, we will address them only briefly. Although the crimes at issue were violent, we agree with the trial court's assessment that they were not characterized by shocking or brutal conduct on the defendant's part. Also, in considering this factor, we ask whether "there was a significant disparity in the degree of brutality that was reflected by the evidence in each case." *State* v. *Swain*, 101 Conn. App. 253, 263, 921 A.2d 712, cert.

---

[4] The defendant implicitly argues that the fact that he was convicted of *any* of the charges pending against him reflects that he was prejudiced by the court's ruling. As stated previously in this opinion, our Supreme Court has elaborated on the factors to consider in evaluating the risk of prejudice resulting from joinder. See *State* v. *Boscarino*, supra, 204 Conn. 722–24. Likewise, we have already stated that there is a preference in our law favoring joinder of cases where a risk of prejudice has not been demonstrated. See, e.g., *State* v. *Johnson*, 289 Conn. 437, 451, 958 A.2d 713 (2008); *State* v. *Davis*, supra, 286 Conn. 29. It is apparent from our examination of the defendant's brief as well as his argument before this court that he disfavors this well established jurisprudence. As it is, however, axiomatic that we are bound by the decisions of our Supreme Court; *State* v. *Colon*, 71 Conn. App. 217, 245–46, 800 A.2d 1268, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002); we are not persuaded by his arguments in this regard.

denied, 283 Conn. 909, 928 A.2d 539 (2007). Here, the defendant's alleged conduct in both shootings was not significantly dissimilar in nature.

Finally, considering the duration and complexity of the trial, we agree with the court's determination that neither case involved notably complex legal issues. Each of the state's two cases focused on a different shooting incident, not a continuous course of criminal conduct that spanned a long duration of time. Also, joining the two cases did not result in a trial that was unreasonably long, as the presentation of the state's evidence occurred over a period of three days and the defendant presented evidence during a portion of one day. See id., and cases cited therein. Additionally, we observe that the cases did not involve complex or an extraordinary number of criminal charges.

In light of all of these factors, we conclude that the defendant has not demonstrated that the court's ruling caused him substantial prejudice. Accordingly, we conclude that the court's ruling on the state's motion to consolidate did not reflect an abuse of discretion.[5]

## II

The defendant next claims that the evidence did not support the jury's verdict as to both of the crimes of which he stands convicted. We disagree.

[5] As noted previously in this opinion, the state argued that joinder was appropriate under the *Boscarino* factors already discussed and, in the alternative, because evidence was cross admissible in both cases with regard to issues of intent and identity. See *State* v. *Pollitt*, 205 Conn. 61, 68, 530 A.2d 155 (1987) ("Where evidence of one incident can be admitted at the trial of the other, separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial.").

Although the defendant argues on appeal that joinder was not proper under *Pollitt*'s rationale, we need not address this issue. In granting the state's motion, the court relied solely on the *Boscarino* factors, and we have already concluded that the court's exercise of discretion was sound. See *State* v. *Carty*, 100 Conn. App. 40, 44, 45 n.5 and 48 n.7, 916 A.2d 852 (court

Before we address separately the arguments raised with regard to each crime, we set forth our standard of review. "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . [T]he trier of fact may credit part of a witness' testimony and reject other parts." (Citation omitted; internal quotation marks omitted.) *State* v. *Millan*, 290 Conn. 816, 825, 966 A.2d 699 (2009).

### A

### Conspiracy to Commit Assault in the First Degree

To support a conviction of conspiracy to commit assault in the first degree, as charged, the state bore the burden of proving beyond a reasonable doubt (1) that the defendant intended that conduct constituting

could properly have joined cases under either application of *Boscarino* factors *or* under theory that evidence from each case cross admissible), cert. denied, 282 Conn. 917, 925 A.2d 1100 (2007).

the crime of assault in the first degree be performed, (2) that the defendant agreed with another person to engage in or cause the performance of such conduct and (3) that either of them committed an overt act in pursuance of such conspiracy. See General Statutes § 53a-48. "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ." General Statutes § 53a-59 (a).

1

Evidence Identifying the Defendant as the Perpetrator of the Crime

The defendant first argues that the state failed to present sufficient evidence that he was at the scene of the New Britain Avenue shooting. The defendant correctly observes that during the trial, in February, 2007, the state presented identification evidence from Aponte. Aponte discussed the events leading to and including the shooting on New Britain Avenue on May 16, 2003. He made an unequivocal in-court identification of the defendant as one of the persons he spoke with prior to entering the automobile, the driver of the automobile that he entered and one of two persons who pointed a gun at him immediately prior to the time that he sustained three gunshot wounds. With regard to this identification, Aponte testified that he had "no doubt at all." Aponte testified that after the defendant drove the automobile into the parking lot, he brandished a .357 magnum handgun with a long barrel and pointed it in Aponte's face. He recalled that when the defendant and the passenger of the automobile were pointing their guns at him, he observed the guns and looked directly into their eyes. The state also presented evidence that on August 16, 2005, a detective from the Hartford police

department showed Aponte a photographic array concerning this case. Aponte identified the defendant's photograph from among the photographs presented to him, stating clearly that the defendant was involved in the shooting. Aponte similarly identified Radney's photograph from a separate array.

Aponte testified that he was hospitalized for his injuries and that he underwent multiple surgeries. He recalled speaking to law enforcement personnel during his stay at the hospital but admitted that he was "very medicated at the time" and that his time in the hospital was a "blur" to him. A police detective testified that, while Aponte was in the hospital, he did not provide the police with a description of his assailants. The detective also testified that an officer showed Aponte photographs of possible suspects at the hospital but that he did not identify anyone in those photographs.[6] When questioned during cross-examination as to why he did not provide a description of his assailants during his hospitalization following the shooting, Aponte testified that, at the time, he had been shot, was in shock and was "barely conscious." He testified that, in light of his serious medical condition at that time, the questions posed to him by the police were irrelevant to him and that he was under the influence of several medications. He stated, however, that, if he had been shown a photograph of one of his assailants at the hospital, he would have recognized such assailant.

The defendant argues that Aponte's identifications of him were insufficient to identify him as involved in the crime. The defendant relies heavily on the fact that Aponte did not identify him in the photographic array until twenty-seven months following the shooting. The

---

[6] Those photographs were not presented in evidence, and the record does not reflect that the police showed Aponte a photograph of either the defendant or Radney.

defendant also argues that the state failed to present any other evidence that connected him to the shooting, noting that the state did not present Aponte's companion, Medina, as a witness and that at least one other witness described the New Britain Avenue shooting suspects as Hispanic men.[7] Further, the defendant argues that Aponte's identification was unreliable because the police detective who showed the photographic arrays to Aponte failed to inform Aponte that a suspect may or may not have been in the arrays he was shown. He further argues that the out-of-court identification was so impermissibly suggestive that it rendered Aponte's in-court identification unreliable.

As a preliminary matter, at trial, the defendant did not object to the admission of the identification evidence, and, in this appeal, he does not challenge the admissibility of such evidence. Although it was his right to do so, the defendant did not move to suppress the out-of-court identification that Aponte made by use of the photographic array. The claim that is before us is whether the evidence presented to the jury supported a finding that the defendant was present at the crime scene. We decline the defendant's invitation to intermingle our evaluation of that issue with an analysis of the admissibility of the identification evidence. See *State* v. *Carey*, 228 Conn. 487, 496, 636 A.2d 840 (1994) ("[c]laims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error"); *State* v. *Smith*, 73 Conn. App. 173, 180, 807 A.2d 500 ("a claim of insufficiency of the evidence must be tested by reviewing no less than, and no more than, the evidence introduced at trial"), cert. denied, 262 Conn. 923, 812 A.2d 865 (2002).

On the basis of Aponte's unequivocal identifications of the defendant, we readily conclude that a finding

---

[7] The evidence reflected that the defendant is a black male.

that he was present at the shooting scene was amply supported by the evidence. The defendant essentially urges us to second-guess the jury's reliance on Aponte's identification evidence, something that we decline to do. The jury, as the arbiter of the facts, was free to draw whatever reasonable inferences that were permitted by the evidence. The defendant argues that Aponte was unable to identify him for twenty-seven months following the shooting. There is no evidence to support such an inference. There was evidence that on May 16, 2003, Aponte had several opportunities to, and did, observe the defendant. The jury reasonably could have concluded that Aponte, as he testified, was not able to effectively and thoroughly communicate with the police during his hospitalization. The state presented evidence that Aponte unambiguously identified the defendant's photograph twenty-seven months after the shooting when it was presented to him in a photographic array. The jury was asked to evaluate the evidence concerning this identification and to observe the defendant's in-court identification; this was a credibility issue for the jury to resolve. Drawing inferences consistent with the defendant's guilt, there is no basis on which to conclude that the jury did not properly rely on Aponte's identification of the defendant. Accordingly, we conclude that Aponte's identifications of the defendant provided an ample basis in the evidence on which to find that the defendant was at the scene of the shooting.[8]

---

[8] The defendant's arguments that "other witnesses failed to identify [him] as a perpetrator of the crime," that "the state failed to produce a necessary witness who could have either corroborated or contradicted Aponte's testimony" and that the state did not present any physical evidence tying him to the crime scene merit little discussion. It is of no consequence to our analysis of the evidence that the state did not present the testimony of any other witness identifying the defendant as the perpetrator of the crime. Aponte's testimony was sufficient. The defendant has not drawn our attention to any legal authority that required the state to present cumulative identity evidence from more than one source. Similarly, the defendant has not drawn our attention to any legal authority that required the state to present physical evidence tying the defendant to the New Britain Avenue

2

Evidence of the Defendant's Mental State

The defendant also argues that there was insufficient evidence to find that he acted with the requisite mental state required for the commission of the crime. "Conspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . Thus, [p]roof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 167, 869 A.2d 192 (2005). The defendant asserts that the state failed to prove either element of intent in the present case.

"[W]hile the state must prove an agreement [to commit assault with a deadly weapon or a dangerous instrument], the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts. . . . Further, [c]onspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons." (Internal quotation marks omitted). *State* v. *Millan*, supra, 290 Conn. 826.

Here, the state presented evidence that the defendant and Radney took part in a coordinated course of conduct on May 16, 2003. The defendant and Radney

crime scene to prove that he was present at that scene at the time of the shooting.

approached Aponte, spoke to him about purchasing marijuana and drove off with Aponte in the backseat of the automobile. According to Aponte's testimony, shortly after the defendant drove away, he disregarded Aponte's directions and drove to a parking lot. At that point, Radney brandished a small caliber handgun and pointed it at Aponte. The defendant then did the same thing, with a larger caliber handgun. Aponte testified that neither man said anything to him, but they both looked at him and smiled. Aponte stated that on the basis of this conduct, he implied that they were about to rob him. At that point, Aponte opened the door and attempted to flee. He sustained two gunshot wounds that were consistent with a small caliber handgun and another gunshot wound to his right arm that was consistent with a larger caliber handgun.

The evidence of the conduct of the defendant and Radney amply supports a reasonable inference that both of them had planned to act in unison to accomplish a criminal purpose and, thus, that they were acting as coconspirators at the time of the shooting. After Aponte accompanied the men, the defendant stopped his automobile in a parking lot. Both men turned to him, brandished their handguns in a similar manner and, upon doing so, exhibited similar facial expressions. The defendant relies on the fact that neither perpetrator said anything to Aponte, arguing that it somehow precludes a finding that they intended to conspire to bring about an assault. We reject the defendant's claim that an intent to conspire to bring about the criminal result at issue need have been proven by evidence of spoken words between the coconspirators or between one or more coconspirators and their victim. We conclude that the evidence of their conduct, prior to and during the shooting, amply reflected that the defendant acted with an intent to conspire.

The activities of the defendant and Radney also support a finding that the defendant intended to commit the offense of assault in the first degree. "It is axiomatic that a factfinder may infer an intent to cause serious physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident." (Internal quotation marks omitted.) *State* v. *Vasquez*, 68 Conn. App. 194, 207, 792 A.2d 856 (2002). Here, there was evidence concerning the manner that the defendant and Radney pointed their handguns directly at Aponte. The defendant was brandishing a large caliber handgun, and certainly such a weapon is capable of inflicting serious physical injury. The manner in which these handguns were used, and not least of all the fact that Aponte sustained three gunshot wounds,[9] reflects that the defendant and his coconspirator intended to inflict serious physical injury.

B

Assault in the First Degree as an Accessory

With regard to this conviction, the defendant raises the same claim concerning identity evidence that he raised in part II A 1, asserting that the state failed to prove beyond a reasonable doubt that he was at the scene of the New Britain Avenue shooting. Relying on our previous analysis of that issue, we reject the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] It is not in dispute that the gunshot wounds suffered by Aponte were serious in nature, requiring surgeries and hospitalization.